**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ZOHRA MAVANI,** | § | **CAUSE NO.**_____ |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **DASPIT LAW FIRM, PLLC** | § | |
| *Defendant* | § | |

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Plaintiff Zohra Mavani ( hereinafter as "Plaintiff" or "Mavani") and files this Original Complaint against Defendant Daspit Law Firm, PLLC ( hereinafter as "Defendant" or "Daspit"), and respectfully alleges as follows:

## I. NATURE OF THE ACTION

1.  This is an employment-discrimination action arising from Defendant's unlawful treatment of Plaintiff after Defendant learned that Plaintiff was pregnant and needed pregnancy-related workplace support, flexibility, accommodation, and leave.

2.  Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, which provides that discrimination "because of sex" includes discrimination because of pregnancy, childbirth, or related medical conditions. See 42 U.S.C. § 2000e(k).

3.  Plaintiff also brings claims under Chapter 21 of the Texas Labor Code, which prohibits employment discrimination because of sex, including pregnancy-related discrimination.

4.  Plaintiff further brings claims under the Pregnant Workers Fairness Act ("PWFA"), which requires covered employers to provide reasonable accommodations for known limitations

related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions, absent undue hardship. The EEOC's interpretive guidance implementing the PWFA appears at 29 C.F.R. Part 1636, Appendix A.

5.  Plaintiff further pleads, to the extent applicable and supported by the evidence, claims and damages arising from Defendant's denial of, interference with, or retaliation relating to protected pregnancy-related medical leave, including leave represented or required under Defendant's employee handbook, policies, the Family and Medical Leave Act, and other applicable law.

6.  Defendant's conduct included adverse employment actions, materially adverse changes to the terms and conditions of Plaintiff's employment, denial or withdrawal of promised pregnancy-related accommodations, hostile and intimidating treatment, demotion, reduction in compensation, denial of leave, account deactivation, placement on medical leave, transition to COBRA coverage, refusal to pay earned compensation, and termination or effective termination of Plaintiff's employment.

## II. PARTIES

7.  Plaintiff Zohra Mavani is an individual residing in Denton County, Texas. At all relevant times, Plaintiff was an employee of Defendant and was qualified for her position.

8.  Defendant Daspit Law Firm, PLLC is a Texas-based law firm with its principal office in Houston, Harris County, Texas. Defendant may be served with process through its principal, officer, or other person authorized by law at Daspit Law Firm, PLLC, 440 Louisiana Street, Suite 1400, Houston, Texas 77002, or registered agent John Arthur Daspit, 952 Echo Lane, Suite 409, Houston, Texas 77024, or wherever Defendant or its authorized representative may be found.

9.  At all relevant times, Defendant was Plaintiff's employer within the meaning of Title VII, Chapter 21 of the Texas Labor Code, the PWFA, and any other applicable employment

laws. Plaintiff pleads that Defendant employed the number of employees required for coverage under the applicable statutes or is otherwise legally responsible as a covered employer.

10.    At all relevant times, Defendant acted through its principals, owners, managers, supervisors, employees, representatives, and agents, including individuals with authority over Plaintiff's employment, assignments, accommodations, leave, compensation, benefits, and continued employment.

### III. JURISDICTION & VENUE

11.    This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 because this action arises under federal law, including Title VII, the Pregnancy Discrimination Act, the PWFA, and, to the extent applicable, federal protected-leave laws.

12.    This Court also has jurisdiction under 28 U.S.C. § 1343 because Plaintiff seeks relief for violations of federal civil-rights laws.

13.    This Court has jurisdiction over Plaintiff's Title VII claims under 42 U.S.C. § 2000e-5(f), which authorizes a civil action after administrative exhaustion and issuance of a right-to-sue notice.

14.    This Court has supplemental jurisdiction over Plaintiff's related Texas Labor Code Chapter 21 claims and other related state-law claims, if any, under 28 U.S.C. § 1367 because those claims arise from the same case or controversy as Plaintiff's federal claims.

15.    Venue is proper in the Southern District of Texas, Houston Division, under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Harris County, Texas; Defendant maintains its

principal office in Houston, Harris County, Texas; relevant employment records are maintained or administered in this District; and Plaintiff would have worked in or been connected to Defendant's Texas operations but for Defendant's unlawful employment practices.

16.    Personal jurisdiction exists over Defendant because Defendant resides in Texas, conducts business in Texas, maintains its principal office in Houston, Texas, employed Plaintiff in Texas, and committed or directed the unlawful employment practices alleged in this Complaint in Texas.

## IV. CONDITIONS PRECEDENT & ADMINISTRATIVE EXHAUSTION

17.    Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") concerning the discriminatory, retaliatory, and otherwise unlawful employment practices alleged in this Complaint.

18.    The EEOC issued Plaintiff a Notice of Right to Sue on or about April 27, 2026.

19.    Plaintiff files this action within the applicable limitations period following receipt of the Notice of Right to Sue pursuant to EEOC Charge No. 450-205-1091. [ **Exhibit A** ]

20.    To the extent required for Plaintiff's Chapter 21 claims, Plaintiff timely initiated and exhausted the administrative process and satisfied all statutory prerequisites to filing suit.

21.    All conditions precedent to Plaintiff's claims for relief have been performed, have occurred, or have been waived.

### V. FACTUAL ALLEGATIONS

22.    Plaintiff Zohra Mavani, female, was employed by Defendant Daspit Law Firm from approximately November 2021 until the termination of her employment in 2025.

23.    Plaintiff was employed as a Senior Attorney and, during her employment, performed significant legal and management responsibilities for Defendant.

24.    Plaintiff managed a docket of approximately 300 personal-injury cases, supervised Defendant's Dallas office, and oversaw multiple cases in active litigation.

25.    Plaintiff consistently performed her duties competently and capably, demonstrated strong performance, received increased responsibilities, and was recognized within the firm for her work.

26.    Plaintiff was qualified for her position and met Defendant's performance expectations.

27.    Plaintiff had received no negative performance evaluations prior to her separation from employment.

28.    In or around November 2024, Plaintiff learned that she was pregnant.

29.    In November 2024, Plaintiff disclosed her pregnancy to Jared Capps, an attorney at the firm and part of Defendant's management hierarchy.

30.    In or around December 2024, Plaintiff informed John Daspit that she was pregnant. Around this time, Defendant began to treat the Plaintiff with hostile conduct.

31.    This conduct included yelling at Plaintiff over the phone on multiple occasions, making demeaning remarks, and creating a toxic and hostile work environment.

32. Defendant's hostile conduct toward Plaintiff was witnessed by others, including Martin Moore, who provided a sworn statement concerning John Daspit's conduct.

33. After Plaintiff disclosed her pregnancy, Defendant initially assured Plaintiff that she would be supported during her pregnancy.

34. Defendant's assurances included representations that Plaintiff would be permitted to work from home, take time off as needed, and receive FMLA leave or maternity-leave benefits consistent with Defendant's employee handbook.

35. At the time Defendant made those representations, and at all times relevant, Defendant employed approximately fifty or more employees and represented or maintained policies indicating that eligible employees could receive FMLA benefits.

36. Despite those assurances, Defendant's treatment of Plaintiff changed substantially after Defendant learned of her pregnancy and need for pregnancy-related accommodations, flexibility, and leave.

37. After Plaintiff disclosed her pregnancy, the harassment, hostility, and intimidation escalated.

38. Defendant subjected Plaintiff to verbal abuse, threats, demeaning emails, heightened scrutiny, unwarranted criticism, and conduct intended to intimidate or assert control over her.

39. On at least one occasion after Plaintiff disclosed her pregnancy, Plaintiff was required to come to the office on a Saturday, which was not Defendant's normal practice and which Plaintiff reasonably perceived as intended to intimidate and assert control over her.

40. Plaintiff was excluded from professional opportunities, decision-making processes, and work-related communications in a manner inconsistent with her position, responsibilities, and prior treatment.

41. Plaintiff was held to a higher and different standard than employees who had not disclosed pregnancy-related needs.

42. Defendant denied, withdrew, interfered with, or failed to provide the pregnancy-related support and accommodations that had been promised to Plaintiff and that were necessary for Plaintiff to continue performing the essential functions of her position.

43. Defendant failed to engage in a lawful, good-faith interactive process regarding reasonable accommodations for Plaintiff's known pregnancy-related limitations and needs.

44. On or about April 29, 2025, during a mediation related to a personal injury case wherein the Defendant represented one of the parties, John Daspit made racist and demeaning remarks toward Plaintiff during a three-way call with Jared Capps.

45. John Daspit's conduct during the April 29, 2025 call caused Plaintiff to suffer a severe anxiety episode.

46. As a result of the April 29, 2025 incident, Plaintiff required hospitalization and was diagnosed with stress-induced preeclampsia.

47. Plaintiff's physician advised that Plaintiff immediately take FMLA leave because of the risks to Plaintiff's health and the health of her baby.

48. After Plaintiff's hospitalization and medical need for leave, Defendant took additional adverse and materially adverse actions against Plaintiff.

49. Defendant then demoted Plaintiff from her role as a litigator overseeing multiple cases in active litigation to a docket-review position.

50. Defendant converted Plaintiff's salary to an hourly rate, causing a significant reduction in Plaintiff's income.

51. Defendant denied Plaintiff FMLA leave despite Plaintiff's eligibility, medical necessity, and Defendant's prior assurances.

52. Defendant deactivated Plaintiff's firm accounts, portal access, and other credentials, and placed Plaintiff on medical leave against her will.

53. Defendant transitioned Plaintiff to COBRA insurance, imposing substantial costs on Plaintiff and effectively ending or materially altering the employment relationship.

54. Defendant ultimately terminated Plaintiff's employment in 2025.

55. Defendant also refused to pay Plaintiff already-earned compensation, including unpaid bonus compensation and client source fees owed to Plaintiff. This failure continues to the date of this instrument.

56. As of the filing of this action, Plaintiff's earned bonus compensation, client source fees, wages, and other compensation remain outstanding and unpaid. Indeed, Plaintiff has not been apprised as to the status on ongoing litigation on multiple matters wherein she was either the attorney in charge, or the originating attorney - in either event, contractually entitling her to a percentage of the attorneys fees or contingency fees related to those matters.

**Similarly Situated Comparator / Pattern of Engagement**

57.     On information and belief, Makayla Davis, female, was also pregnant while employed by Defendant.

58.     On information and belief, after Defendant learned of Davis's pregnancy and/or pregnancy-related needs, Defendant treated Davis poorly in a manner similar to its treatment of Plaintiff.

59.     Defendant subjected Davis to similar adverse or materially adverse treatment, including heightened scrutiny, exclusion from work-related opportunities or communications, hostility, denial or interference with workplace flexibility, leave-related pressure, or other unfavorable treatment connected to pregnancy or pregnancy-related needs.

60.     Defendant's similar poor treatment of both Plaintiff and Davis supports an inference that Defendant engaged in a pattern or practice of discriminating against pregnant employees and employees with pregnancy-related needs.

61.     Defendant's similar treatment of Davis also supports an inference that Defendant's stated reasons for its treatment of Plaintiff were pretextual and that Plaintiff's pregnancy, childbirth-related status, and pregnancy-related needs were motivating factors in Defendant's actions.

62.     Plaintiff maintained records of emails, text messages, and other communications documenting Defendant's harassment, discriminatory treatment, denial of accommodations, retaliation, adverse employment actions, and nonpayment of earned compensation.

63.     Defendant's actions constituted adverse employment actions and materially adverse changes in the terms, conditions, and privileges of Plaintiff's employment.

64. Plaintiff's pregnancy, childbirth-related status, pregnancy-related medical condition, need for pregnancy-related accommodations, need for leave, and opposition to unlawful discrimination were motivating factors in Defendant's adverse and materially adverse actions.

65. Defendant's conduct caused Plaintiff to suffer financial harm, lost compensation, lost benefits, unpaid earned compensation, emotional distress, mental anguish, humiliation, professional harm, reputational harm, inconvenience, medical distress, and other damages.

## VI. CAUSES OF ACTION

### A.   PREGNANCY DISCRIMINATION – TITLE VII & THE PREGNANCY DISCRIMINATION ACT

66. Plaintiff incorporates by reference all preceding paragraphs, *in haec verba.*

67 . To establish a prima facie case of pregnancy discrimination under Title VII, as amended by the Pregnancy Discrimination Act ("PDA"), a plaintiff must show that: (1) she was pregnant, affected by pregnancy, childbirth, or a related medical condition, or otherwise within the PDA's protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) similarly situated non-pregnant employees were treated more favorably, or the circumstances otherwise support an inference of pregnancy-based discrimination. See 42 U.S.C. §§ 2000e(k), 2000e-2(a)(1); *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206–07 (5th Cir. 1998); *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003); *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 966–68 (5th Cir. 2016). The Fifth Circuit analyzes PDA claims under the Title VII burden-shifting framework applicable to circumstantial evidence. *Laxton*, 333 F.3d at 578; *Fairchild*, 815 F.3d at 966.

68.    Accordingly, Plaintiff submits that she was pregnant and/or affected by pregnancy, childbirth, preeclampsia, anxiety caused or worsened by Defendant's conduct, and related medical conditions during the events at issue; qualified for her position; did suffer adverse employment actions as alleged above; and that the circumstances otherwise support the inference of pregnancy based discrimination.

69.    Plaintiff was qualified for her position, performed her duties satisfactorily, managed significant litigation responsibilities, supervised Defendant's Dallas office, oversaw multiple active litigation matters, and received increased responsibilities and recognition within the firm.

70.    Defendant knew of Plaintiff's pregnancy and pregnancy-related needs because Plaintiff disclosed her pregnancy to Jared Capps in or around November 2024 and to John Daspit in or around December 2024.

71.    After Defendant learned of Plaintiff's pregnancy, Defendant subjected Plaintiff to adverse employment actions and materially adverse changes in the terms, conditions, and privileges of employment.

72.    These adverse actions included, but were not limited to, escalating harassment, threats, demeaning emails, racist and demeaning remarks, forced Saturday office attendance, exclusion from opportunities and communications, heightened scrutiny, unwarranted criticism, denial or withdrawal of promised pregnancy-related accommodations, denial of leave, demotion, reduction of compensation from salary to hourly pay, account deactivation, placement on medical leave, transition to COBRA coverage, refusal to pay earned compensation, and termination.

73.    Defendant treated Plaintiff less favorably than employees who were not pregnant and who had not disclosed pregnancy-related needs.

74.    Defendant's initial assurances that Plaintiff would be supported, permitted to work from home, allowed to take time off as needed, and receive leave benefits, followed by Defendant's later denial or withdrawal of that support, support an inference of discriminatory intent.

75.    Defendant's treatment of Plaintiff after her hospitalization and diagnosis of preeclampsia further supports an inference that Defendant discriminated against Plaintiff because of pregnancy, childbirth-related status, pregnancy-related medical needs, and related conditions.

76.    On information and belief, Makayla Davis was also pregnant while employed by Defendant and was subjected to similar poor treatment after Defendant learned of her pregnancy and/or pregnancy-related needs.

77.    Defendant's similar adverse or materially adverse treatment of both Plaintiff and Davis supports an inference that Defendant maintained or tolerated a pattern or practice of discriminating against pregnant employees.

78.    Defendant's similar treatment of Makayla Davis supports an inference of discriminatory intent and demonstrates that Defendant treated pregnant employees less favorably because of pregnancy, childbirth-related status, and/or related medical needs.

79.    Defendant's stated reasons for its actions, to the extent any are asserted, are pretextual.

80.    Plaintiff's pregnancy, childbirth-related condition, preeclampsia, related medical needs, and need for pregnancy-related accommodation and leave were motivating factors in Defendant's unlawful employment practices.

81. Defendant's conduct violated Title VII, as amended by the Pregnancy Discrimination Act, and caused Plaintiff damages recoverable by law.

**B. PREGNANCY DISCRIMINATION – CHAPTER 21 OF THE TEXAS LABOR CODE,** *in the alternative*

82. Plaintiff incorporates by reference all preceding paragraphs, *in haec verba.*

83. Chapter 21 of the Texas Labor Code makes it an unlawful employment practice for an employer, because of sex, to discharge an employee or otherwise discriminate against her in compensation or in the terms, conditions, or privileges of employment. Tex. Lab. Code § 21.051.

84. Chapter 21 expressly provides that discrimination "because of sex" includes discrimination because of pregnancy, childbirth, or a related medical condition, and requires women affected by pregnancy, childbirth, or related medical conditions to be treated the same as other employees similar in their ability or inability to work. Tex. Lab. Code § 21.106(a)–(b).

85. A plaintiff need not show that pregnancy was the sole cause of the challenged employment action; it is sufficient that pregnancy, childbirth, or a related medical condition was a motivating factor, even if other factors also motivated the employer's conduct. Tex. Lab. Code § 21.125(a); see *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755 (Tex. 2018). Because Chapter 21 is modeled on and intended to correlate with federal employment-discrimination law, Texas courts look to analogous Title VII authority where appropriate. See *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500 (Tex. 2012); *Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644 (Tex. App.—Dallas 2012, no pet.).

86. Plaintiff was pregnant and/or affected by pregnancy, childbirth, preeclampsia, pregnancy-related anxiety caused or worsened by Defendant's conduct, and other related medical conditions during the relevant period. Plaintiff therefore belonged to a class protected by Chapter 21. Tex. Lab. Code § 21.106(a); see *Kipp, Inc. v. Whitehead*, 446 S.W.3d 99 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (recognizing that women pregnant at or near the time of an adverse action, on maternity leave, or recently returned from maternity leave fall within the pregnancy-discrimination protection of Chapter 21).

87. Defendant knew of Plaintiff's pregnancy and pregnancy-related needs because Plaintiff disclosed those facts and needs to Jared Capps and John Daspit.

88. After Defendant learned of Plaintiff's pregnancy and related medical needs, Defendant subjected Plaintiff to adverse employment actions and materially adverse changes in the terms, conditions, compensation, and privileges of her employment, including escalating hostility, threats, demeaning communications, racist and degrading remarks, exclusion from opportunities, heightened scrutiny, denial or withdrawal of promised accommodations, denial of leave, demotion, reduction in compensation, deactivation of accounts, forced or imposed medical leave, transition to COBRA, refusal to pay earned compensation, and termination.

89. Defendant also treated Makayla Davis poorly after learning that Davis was pregnant and/or had pregnancy-related needs. Defendant's treatment of both Plaintiff and Davis supports a reasonable inference that Defendant maintained, tolerated, or ratified a discriminatory practice toward pregnant employees and employees affected by pregnancy, childbirth, or related medical conditions.

90.    The timing of Defendant's actions, Defendant's knowledge of Plaintiff's pregnancy and related medical needs, Defendant's withdrawal or denial of accommodations and leave, Defendant's escalating hostility, Defendant's adverse employment actions, and Defendant's similar treatment of another pregnant employee support a reasonable inference that Plaintiff's pregnancy, childbirth-related condition, preeclampsia, and related medical needs were motivating factors in Defendant's conduct. See Tex. Lab. Code § 21.125(a); *Janssen Pharmaceutica, Inc. v. Martinez*, 296 S.W.3d 634 (Tex. App.—El Paso 2009, no pet.) (analyzing whether pregnancy was a motivating factor in a termination decision under Chapter 21).

91.    Defendant's stated reasons, to the extent any are offered, are pretextual or unworthy of credence. A Chapter 21 plaintiff may prove discrimination through circumstantial evidence under the *McDonnell Douglas* burden-shifting framework by establishing a prima facie case, after which the employer must articulate a legitimate nondiscriminatory reason and the plaintiff may show that the stated reason is pretext for discrimination. See *Jespersen*, 390 S.W.3d 644; *Baehler v. Fritz Industries*, 993 S.W.2d 181 (Tex. App.—Texarkana 1999, no pet.).

92.    Defendant's conduct constitutes unlawful pregnancy discrimination and sex discrimination under Chapter 21 of the Texas Labor Code and caused Plaintiff damages recoverable by law.Chapter 21 of the Texas Labor Code and caused Plaintiff damages recoverable by law.

**C.     RETALIATION UNDER TITLE VII – PREGNANCY DISCRIMINATION ACT; THE PREGNANT WORKERS FAIRNESS ACT; & CHAPTER 21 OF THE TEXAS LABOR CODE,** *in the alternative*

93.    Plaintiff incorporates by reference all preceding paragraphs, *in haec verba.*

**1. Retaliation Under Title VII — Pregnancy Discrimination Act**

94.    Title VII prohibits retaliation against an employee because she opposed an unlawful employment practice, made or supported a complaint, or otherwise asserted rights protected by Title VII. 42 U.S.C. § 2000e-3(a). The Pregnancy Discrimination Act confirms that discrimination "because of sex" includes discrimination because of pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k).

95.    A Title VII retaliation claim requires Plaintiff to show that (1) she engaged in protected activity; (2) Defendant took a materially adverse action against her; and (3) a causal connection exists between the protected activity and the adverse action. See *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002); *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).

96.    Protected activity includes opposing practices made unlawful by Title VII, using internal complaint processes, complaining about discrimination, and acting on a reasonable belief that the employee is opposing unlawful discrimination. See *Ackel*, 339 F.3d at 385; *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001); *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002).

**2. Retaliation and Interference Under the Pregnant Workers Fairness Act**

97.    The Pregnant Workers Fairness Act requires covered employers to provide reasonable accommodations for known limitations related to pregnancy, childbirth, or related medical conditions unless the employer can demonstrate undue hardship. 42 U.S.C. § 2000gg-1.

98. The PWFA prohibits retaliation against an employee for exercising or attempting to exercise rights under the statute and prohibits coercion, intimidation, threats, or interference with the employee's exercise or enjoyment of PWFA rights. 42 U.S.C. § 2000gg-2(f).

**3. Retaliation Under Chapter 21 of the Texas Labor Code,** *in the Alternative*

99. Chapter 21 of the Texas Labor Code prohibits retaliation against a person who opposes a discriminatory practice, makes or files a charge, files a complaint, or testifies, assists, or participates in an investigation, proceeding, or hearing under Chapter 21. Tex. Lab. Code § 21.055.

100. Chapter 21 prohibits discrimination because of sex, including discrimination because of pregnancy, childbirth, or a related medical condition. Tex. Lab. Code §§ 21.051, 21.106.

101. A Chapter 21 retaliation claim requires Plaintiff to show that (1) she engaged in protected activity; (2) Defendant took an adverse or materially adverse action against her; and (3) a causal connection exists between the protected activity and the adverse action. Texas courts look to analogous federal authority when interpreting Chapter 21. See *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476–77 (Tex. 2001); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 763–64 (Tex. 2018).

**4.      Factual Allegations Supporting Retaliation**

102. Plaintiff engaged in protected activity under Title VII, the PDA, the PWFA, and Chapter 21 by disclosing her pregnancy and pregnancy-related medical conditions; opposing discriminatory and hostile treatment; requesting pregnancy-related workplace accommodations; requesting work-from-home flexibility; requesting time off and leave; and asserting rights protected by federal and state employment-discrimination laws.

103. Plaintiff further engaged in protected activity when, after hospitalization and diagnosis of preeclampsia, she communicated or caused to be communicated her physician-directed need for immediate leave due to risks to her health and the health of her baby.

104. Defendant knew of Plaintiff's protected activity, pregnancy, pregnancy-related medical conditions, pregnancy-related limitations, accommodation requests, leave requests, and opposition to discriminatory and hostile treatment, including through Plaintiff's disclosures and communications to Jared Capps, John Daspit, and/or other agents of Defendant.

105. After Plaintiff engaged in protected activity, Defendant subjected her to adverse and materially adverse actions, including verbal abuse, threats, demeaning emails, racist and demeaning remarks, forced Saturday office attendance, exclusion from communications and opportunities, heightened scrutiny, unwarranted criticism, denial or withdrawal of accommodations, denial of leave, demotion, reduction in compensation, account deactivation, placement on medical leave, COBRA transition, refusal to pay earned compensation, and termination.

106. Defendant's adverse and materially adverse actions would dissuade a reasonable employee from disclosing pregnancy-related limitations, requesting pregnancy-related accommodations, seeking leave, opposing discrimination, or asserting rights protected by Title VII, the PDA, the PWFA, and Chapter 21.

107. Causation is supported by the close timing between Plaintiff's protected activity and Defendant's adverse actions; Defendant's escalating hostility after Plaintiff disclosed her pregnancy; Defendant's withdrawal of promised support; Defendant's adverse actions after Plaintiff's hospitalization and physician-directed need for leave; Defendant's similar

poor treatment of Makayla Davis after Davis disclosed pregnancy and/or pregnancy-related needs; and Defendant's shifting, false, or pretextual explanations, if any.

108. Defendant treated Makayla Davis, who was also pregnant and had disclosed pregnancy and/or pregnancy-related needs, similarly poorly and subjected Davis to adverse or materially adverse treatment comparable to the treatment imposed on Plaintiff.

109. Defendant's similar treatment of pregnant employees supports an inference that Defendant retaliated against employees who asserted rights related to pregnancy, workplace flexibility, accommodations, and leave.

110. Defendant's asserted reasons for its conduct, to the extent any are offered, are pretextual and unworthy of credence.

111. Defendant's conduct constitutes unlawful retaliation under Title VII, including the PDA; unlawful retaliation, coercion, intimidation, threats, and/or interference under the PWFA; and, in the alternative, unlawful retaliation under Chapter 21 of the Texas Labor Code.

112. Defendant's retaliation caused Plaintiff damages recoverable by law.

**D.    HOSTILE WORK ENVIRONMENT BASED ON PREGNANCY & SEX**

113. Plaintiff incorporates by reference all preceding paragraphs, *in haec verba.*

114. Title VII and Chapter 21 of the Texas Labor Code prohibit harassment based on sex, including pregnancy, childbirth, or related medical conditions, when the harassment is sufficiently severe or pervasive to alter the terms, conditions, or privileges of employment and create an abusive working environment. See Tex. Lab. Code §§ 21.051, 21.106;

*Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771–72 (Tex. 2018); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804–07 (Tex. 2010).

115. As set forth in Plaintiff's Factual Allegations, Defendant, through John Daspit and other owners, managers, supervisors, employees, representatives, and agents, subjected Plaintiff to demeaning, abusive, hostile, intimidating, humiliating, and discriminatory conduct, including verbal abuse, threats, demeaning emails, racist and demeaning remarks, forced Saturday office attendance outside normal practice, heightened scrutiny, unwarranted criticism, intimidation, and conduct intended to assert control over Plaintiff.

116. Defendant's hostility escalated after Plaintiff disclosed her pregnancy and was tied to Plaintiff's sex, pregnancy, childbirth-related condition, pregnancy-related medical needs, and/or need for pregnancy-related accommodations and leave. On or about April 29, 2025, during a mediation, John Daspit made racist and demeaning remarks toward Plaintiff during a three-way call with Jared Capps, causing Plaintiff to suffer a severe anxiety episode, hospitalization, and a diagnosis of preeclampsia.

117. Defendant's similar poor treatment of Makayla Davis, who was also pregnant, further supports an inference that Defendant's hostile and demeaning treatment of Plaintiff was tied to pregnancy, pregnancy-related needs, and protected status, and that Defendant maintained or tolerated a hostile environment for pregnant employees.

118. The harassment was sufficiently severe or pervasive to alter the terms, conditions, or privileges of Plaintiff's employment and create an abusive working environment. Courts evaluate severity or pervasiveness under the totality of the circumstances, including the frequency and severity of the conduct, whether it was physically threatening or

humiliating, and whether it unreasonably interfered with the employee's work. See *Alamo Heights*, 544 S.W.3d at 771–72; *Waffle House*, 313 S.W.3d at 805.

119. Defendant knew or should have known of the hostile work environment and failed to take prompt, effective remedial action. Defendant is liable for the conduct of its principals, supervisors, managers, and agents, including John Daspit, because they acted with actual or apparent authority over Plaintiff's employment, compensation, assignments, accommodations, leave, working conditions, and continued employment. Defendant's conduct violated Title VII and Chapter 21 of the Texas Labor Code and caused Plaintiff damages recoverable by law.

**E. FAILURE TO ACCOMMODATE – PREGNANCY DISCRIMINATION ACT, AND PREGNANT WORKERS FAIRNESS ACT, *in the alternative***

120. Plaintiff incorporates by reference all preceding paragraphs, *in haec verba*.

**1. Failure under 42 U.S.C. §§ 2000e(k), 2000e-2(a)(1) – Pregnancy Discrimination Act**

121. Where a pregnancy-discrimination claim is based on denial of an accommodation, the Supreme Court's decision in *Young v. United Parcel Service, Inc*. controls. Under Young, a plaintiff may establish a prima facie case by showing that she belonged to the protected class, sought an accommodation, the employer refused the accommodation, and the employer accommodated others "similar in their ability or inability to work." *Young v. United Parcel Serv., Inc*., 575 U.S. 206, 229 (2015). The employer may then articulate legitimate, nondiscriminatory reasons for refusing the accommodation, and the plaintiff may show that those reasons are pretextual by demonstrating that the employer's policies impose a significant burden on pregnant workers and that the employer's stated reasons are not sufficiently strong to justify that burden. *Id.*

122. Evidence that the employer knew of the pregnancy and took adverse action shortly thereafter, gave inconsistent or shifting reasons, treated nonpregnant employees more

favorably, or made pregnancy-related remarks connected to the employment decision may support an inference of discriminatory intent. See *Laxton*, 333 F.3d at 580–83; *Fairchild*, 815 F.3d at 967–68; *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 607–09 (5th Cir. 2007). Once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged action; the plaintiff may then show that the stated reason is pretextual or, where applicable, that pregnancy was a motivating factor in the decision. See *Laxton*, 333 F.3d at 578; 42 U.S.C. § 2000e-2(m).

123. To the extent that any elements are not met by the PDA, or that any of the Plaintiff's causes of actions are not covered under the auspices of the PDA, Plaintiff now brings forth overlapping, secondary, and contiguous claims under the Pregnant Workers Fairness Act, as elaborated below.

**2.    Failure to Accommodate, Denial of Employment Opportunities, Forced Leave, and Adverse Action Under the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg-1**

124. Plaintiff incorporates by reference all preceding paragraphs, *in haec verba.*

125. Defendant was a covered employer within the meaning of the Pregnant Workers Fairness Act ("PWFA"), and Plaintiff was a qualified employee within the meaning of the PWFA.

126. The PWFA requires covered employers to provide reasonable accommodations to qualified employees for known limitations related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions, absent undue hardship. 42 U.S.C. § 2000gg-1(1). The PWFA is implemented through 29 C.F.R. Part 1636 and the EEOC's interpretive guidance in Appendix A.

127. In addition to the Pregnancy Discrimination Act's prohibition on pregnancy-based disparate treatment, the PWFA imposes an affirmative accommodation obligation on

covered employers. Unlike a PDA disparate-treatment claim, a PWFA accommodation claim does not require Plaintiff to show that similarly situated nonpregnant employees were treated more favorably. The claim turns on (i) whether Plaintiff was a qualified employee with a known pregnancy-related limitation, (ii) whether Defendant knew of the limitation, (iii) whether a reasonable accommodation was available, and (iv) whether Defendant failed to provide accommodation absent undue hardship. See 42 U.S.C. §§ 2000gg, 2000gg-1; *Johnson v. Wag Hotels, Inc.*, No. 3:24-cv-3268-BN (N.D. Tex. Apr. 2, 2025); *Shelton v. Parkland Health*, Civil Action No. 3:24-CV-2190-L-BW (N.D. Tex. May 28, 2025).142.- Plaintiff's known limitations and workplace needs included the need for pregnancy-related workplace flexibility, work-from-home flexibility, time off as needed, and leave.

128.   The PWFA further prohibits an employer from requiring a qualified employee to accept an accommodation other than one reached through the interactive process, denying employment opportunities based on the need for accommodation, requiring leave when another reasonable accommodation can be provided, or taking adverse action because the employee requested or used a reasonable accommodation. 42 U.S.C. § 2000gg-1(2)–(5).

129.   As set forth in Plaintiff's Factual Allegations, Plaintiff had known limitations and workplace needs related to pregnancy, childbirth, preeclampsia, hospitalization, anxiety caused or worsened by Defendant's conduct, and related medical conditions, including the need for pregnancy-related workplace flexibility, work-from-home flexibility, time off as needed, leave, and other reasonable adjustments necessary to protect Plaintiff's health and the health of her baby.

130.   Defendant knew of Plaintiff's pregnancy-related limitations and needs because Plaintiff disclosed her pregnancy and pregnancy-related needs to Jared Capps, John Daspit, and/or

other agents of Defendant; Defendant initially represented that Plaintiff would be supported and accommodated, including through work-from-home flexibility, time off as needed, and FMLA or maternity-leave benefits; and Plaintiff's physician later advised immediate leave after Plaintiff's hospitalization and diagnosis of preeclampsia.

131. Plaintiff was able to perform the essential functions of her position with reasonable accommodation. Alternatively, to the extent Defendant contends Plaintiff was temporarily unable to perform any essential function because of pregnancy, preeclampsia, hospitalization, physician-directed restrictions, or related medical conditions, Plaintiff remained qualified under the PWFA because any such inability was temporary, the function could be performed in the near future, and the limitation could be reasonably accommodated. See 42 U.S.C. § 2000gg(6).

132. Defendant failed to provide reasonable accommodations to Plaintiff's known pregnancy-related limitations and failed to engage in a lawful, timely, good-faith interactive process. Instead, as set forth in Plaintiff's Factual Allegations, Defendant denied or withdrew promised workplace support, denied leave, placed Plaintiff on medical or unpaid leave without legitimate justification, deactivated Plaintiff's accounts, transitioned Plaintiff to COBRA coverage, demoted Plaintiff, reduced Plaintiff's compensation, refused to pay earned compensation, and effectively terminated or materially altered Plaintiff's employment.

133. Defendant's similar poor treatment of Makayla Davis, who was also pregnant, further supports an inference that Defendant failed to provide pregnant employees with reasonable workplace support and accommodations and that Defendant's refusal to accommodate Plaintiff was not based on undue hardship.

134.  Defendant cannot establish that the reasonable accommodations needed by Plaintiff would have imposed an undue hardship.

135.  Defendant's conduct violated the PWFA by failing to accommodate Plaintiff's known pregnancy-related limitations, failing to engage in the interactive process, denying employment opportunities based on Plaintiff's need for accommodation, requiring leave when other reasonable accommodations were available, and taking adverse action against Plaintiff because she requested or needed pregnancy-related accommodations. See 42 U.S.C. § 2000gg-1(1)–(5).

136.  Defendant's asserted reasons for its conduct, to the extent any are offered, are pretextual and unworthy of credence.

137.  Defendant's violations of the PWFA caused Plaintiff damages recoverable by law.

**F.    FMLA ENTITLEMENT INTERFERENCE UNDER 29 CFR § 825.220 et seq**

138.  All factual allegations above are hereby reincorporated in haec verba.

139.  Any violation of the FMLA or its regulations constitutes interference.  29 C.F.R. Sec 825.220(b).  An entitlement claim is a subset of interference claims under which "an employee claims the denial of a benefit to which she is entitled under statute." *Bosley v. Cargill Meat Solutions Corp.*, 705 F.3d 777, 780 (8th Cir. 2013) (quoting *Pulczinski v. Trinity Structural Towers, Inc*., 691 F.3d 996, 1005 (8th Cir. 2012).

140.  To prevail on an entitlement claim, a Plaintiff must establish that they were (A) eligible for FMLA coverage, and that they (B) gave notice to their [former] employer of their impending need for FMLA leave, or cause to engage in the dialogue thereof.

**(A) ELIGIBILITY**

141. Specifically, a Plaintiff must show: (1) that she is an 'eligible employee'; (2) the defendant is an 'employer'; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention or need to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled." *Cavin v. Hond Mfg.*, 346 F.3d 713, 719 (6th Cir. 2003). "To prevail on an interference claim, a plaintiff must establish that (1) he is an 'eligible employee' - which the Plaintiff has done as he worked more than 1,250 hours in the preceding twelve (12) calendar months; (2) the defendant is an 'employer'; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled." *Id.*

**(B) NOTICE**

142. Under the FMLA, the notice requirement is made flexible in favor of the employee in order to serve its fundamental purpose. FMLA regulations require employees to provide thirty (30) days notice of future leave "*if practicable*." 29 C.F.R. Sec 825.302(a). If there is a "change in circumstance" or a "*medical emergency*," notice "must be given as soon as practicable." *Id.* "As soon as practicable" means soon as both possible and practical, taking into account all of the facts and circumstances in the individual." 29 C.F.R. Sec 825.302(b). Plaintiff has plainly met this requirement, having given notice to the Defendant as soon as she was aware of the necessary facts.

143. Moreover, pursuant to the Department of Labor, once an employer becomes aware that an employee's need for leave is for a reason that *may* qualify under the FMLA, the employer *must* notify the employee if her or she is eligible for FMLA leave and, if eligible, *must*

also provide a notice of rights and responsibilities under the FMLA.  If the employee is not eligible, the employer *must* provide a reason for ineligibility. See DOL form WH-1420 and 29 U.S.C. §2601 *et seq*. (emphasis added).

**(C) FAILURE**

144.   Plaintiff has established a prima facie instance of Interference by the Defendant in that: (1) Plaintiff was an eligible employee at the time of incident pursuant to the definitions and tenants of the Family Medical Leave Act of 1993 as outlined in 29 U.S.C. §2601 *et seq*.; (2) the Defendant is an 'employer', pursuant to the above qualifications met in the Jurisdiction and Venue necessities of this cause of action; (3) Plaintiff would have been entitled leave, pursuant to the FMLA, once she notified the Defendant of her pregnancy and any related medical concerns; (4) Plaintiff gave the Defendant proper notice of her need to take medical leave; and (5) the Defendant denied Plaintiff the FMLA benefits to which she was entitled – and even failed to initiate the root process of evaluation and issue a written determination to the Plaintiff – thus failing in its duties.

145.   Plaintiff suffered from a 'serious health condition'; defined by the FMLA as an illness, injury, or impairment, or physical or mental condition that involves either (i) inpatient care in a hospital, hospice, or residential medical care facility; or (ii) continuing treatment by a health care provider. 29 U.S.C.§§ 2601, 2611(11); see also 29 C.F.R.§ 825.114.

146.   [A]n employee gives his employer sufficient notice that she is requesting leave for an FMLA-qualifying condition when she gives the employer enough information for the employer to reasonably conclude that an event described in FMLA 2613(a)(1) has occurred." *Id.* See also *Price v. City of Fort Wayne*, 117 F.3d 1022, 1025-26 (7th Cir.

1997); *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 763 (5th Cir. 1995) (invoking

FMLA by name is not necessary).

**G.    BREACH OF CONTRACT, OR ALTERNATIVELY QUANTUM MERUIT / PROMISSORY ESTOPPEL – UNPAID EARNED COMPENSATION**

147.    Plaintiff incorporates by reference all preceding paragraphs, *in haec verba.*

**Breach of Contract**

148.    Under Texas law, a breach-of-contract claim requires: (1) a valid contract; (2) performance or tendered performance by Plaintiff; (3) breach by Defendant; and (4) damages caused by the breach. See *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 202 (5th Cir. 2016); *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003).

**Quantum Meruit, *alternatively***

149.    In the alternative, to the extent Defendant contends no enforceable contract governs some or all of the unpaid compensation, Plaintiff pleads quantum meruit. Under Texas law, quantum meruit permits recovery when a plaintiff provides valuable services or materials, the defendant accepts and benefits from them, and the circumstances reasonably notify the defendant that the plaintiff expected to be paid. See *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990); *Wohlfahrt v. Holloway*, 172 S.W.3d 630, 634 (Tex. 2005).

**Promissory Estoppel, *alternatively***

150.    Further in the alternative, Plaintiff pleads promissory estoppel. Under Texas law, promissory estoppel applies when a defendant made a promise, the defendant should have foreseen Plaintiff's reliance, Plaintiff substantially and reasonably relied on the promise

to her detriment, and injustice can be avoided only by enforcing the promise. See *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Int'l Energy Ventures*, 818 F.3d at 202.

**Factual Support**

151.   Defendant promised and/or agreed to compensate Plaintiff for her work, including base compensation, bonus compensation, and client source fees, through the parties' employment agreement, compensation arrangement, written or oral promises, policies, practices, and/or course of dealing.

152.   Plaintiff performed her work, provided valuable services and benefits to Defendant, and satisfied the conditions required to earn the compensation at issue.

153.   Defendant accepted and retained the benefit of Plaintiff's work under circumstances that reasonably notified Defendant that Plaintiff expected to be compensated. Defendant failed and refused to pay Plaintiff compensation she had already earned, including bonus compensation and client source fees.

154.   Plaintiff reasonably and foreseeably relied on Defendant's promises and representations regarding compensation, and injustice can be avoided only by requiring Defendant to pay the earned compensation. Plaintiff's earned compensation remains outstanding and unpaid, causing Plaintiff economic damages.

155.   Defendant's refusal to pay earned compensation further supports Plaintiff's allegations that Defendant's stated reasons for its actions were retaliatory, punitive, and pretextual.

156.   Plaintiff seeks recovery of unpaid earned compensation, prejudgment and post-judgment interest, attorney's fees where recoverable, costs, and all other relief available under Plaintiff's contract and alternative equitable theories.

## VII. INFERENCE OF PRETEXT

157. Plaintiff incorporates by reference all preceding paragraphs, *in haec verba.*

158. To the extent Defendant asserts any legitimate, non-discriminatory or non-retaliatory reason for terminating or effectively terminating Plaintiff's employment, demoting Plaintiff, reducing her compensation, denying leave, placing her on medical or unpaid leave, transitioning her to COBRA, deactivating her accounts, or refusing to pay earned compensation, those reasons are false, inconsistent, and unworthy of credence.

159. Pretext is shown by the close timing between Defendant's adverse actions and Plaintiff's disclosure of pregnancy, requests for pregnancy-related accommodations, requests for work-from-home flexibility, requests for time off and leave, hospitalization, diagnosis of preeclampsia, and physician-directed need for immediate leave. See *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 967–68 (5th Cir. 2016); *Laxton v. Gap Inc.*, 333 F.3d 572, 580–83 (5th Cir. 2003).

160. Pretext is further shown by Defendant's reversal of its prior assurances that Plaintiff would be supported, permitted to work from home, allowed to take time off as needed, and provided leave benefits, followed by Defendant's withdrawal or denial of those assurances once Plaintiff's pregnancy-related medical needs became known.

161. Defendant's escalating hostility after Plaintiff disclosed her pregnancy and pregnancy-related limitations—including verbal abuse, threats, demeaning communications, forced office attendance, racist and demeaning remarks, and other intimidating conduct—further supports an inference of discriminatory and retaliatory intent. Pregnancy-related remarks or conduct connected to an adverse employment decision may support an inference of pregnancy discrimination. See *Arismendez v.*

*Nightingale Home Health Care, Inc.*, 493 F.3d 602, 607–09 (5th Cir. 2007); *Laxton*, 333 F.3d at 583 n.4.

162. Defendant's adverse changes to Plaintiff's employment were also inconsistent with Defendant's prior recognition of Plaintiff's strong performance, increased responsibilities, and role as a litigator overseeing multiple active cases. Defendant's demotion of Plaintiff to a docket-review role, conversion of her salary to an hourly rate, deactivation of her accounts, denial of leave, transition to COBRA, and refusal to pay earned compensation, including bonus compensation and client source fees, support an inference that Defendant's asserted reasons were false, punitive, retaliatory, and unworthy of credence. See *Laxton*, 333 F.3d at 578–80.

163. Defendant's shifting, inconsistent, unsupported, or after-the-fact explanations for its treatment of Plaintiff—including any explanation for placing her on medical or unpaid leave, issuing COBRA-related documentation, demoting her, reducing her compensation, denying leave, deactivating her accounts, refusing to pay earned compensation, or terminating or effectively terminating her employment—independently support an inference of pretext. See *Laxton*, 333 F.3d at 578–83.

164. Defendant's similar treatment of Makayla Davis, another pregnant employee, further supports an inference that Defendant's stated reasons were pretextual and that Defendant treated pregnancy, pregnancy-related limitations, and pregnancy-related workplace rights as grounds for adverse treatment. Evidence concerning an employer's treatment of other employees in the same protected class may be probative of discriminatory intent where sufficiently related to the plaintiff's claims. See *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387–88 (2008); *Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 645–46 (5th Cir. 1985).

165. Taken together, Defendant's timing, reversal of promised support, escalating hostility, adverse changes to Plaintiff's duties and compensation, denial of leave and accommodations, transition to COBRA, refusal to pay earned compensation, shifting explanations, and similar treatment of another pregnant employee plausibly show that Defendant's asserted reasons were pretext for pregnancy discrimination, retaliation, failure to accommodate, interference with protected leave and accommodation rights, and other unlawful employment practices.

### IX. DAMAGES & REMEDIES

166. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff seeks all damages and remedies available under Texas and federal law, as follows.

167. **BACK PAY**.  Prevailing claimants under the anti-discrimination laws may recover lost back-pay and benefits.  See *Miller v. Raytheon Co.*, 716 F.3d 138, 146 (5th Cir. 2013).  The purpose of back pay is to "make whole the injured party by placing that individual in the position he or she would have been in but for the discrimination." *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1136 (5th Cir. 1988).

168. **FRONT PAY**.  "Front pay refers to future lost earnings." *Wal-Mart Stores v. Davis*, 979 S.W.2d 30, 45 (Tex. App.-Austin 1998, pet. denied).  Regarding the calculation of front-pay, the Fifth Circuit has stated that  "[f]ront pay is . . . calculated from the date of judgment to age 70, or the normal retirement age, and should reflect earnings in mitigation of damages." *Patterson*, 90 F.3d at 936 n. 8 (citing J. Hardin Marion, Legal and Equitable Remedies Under the Age Discrimination in Employment Act, 45 MD.L.REV. 298, 330-334 (1986)).  See also *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 374 (3d Cir. 1987) ("In calculating a front pay award, the jury must consider the expected

future damages caused by defendant's wrongful conduct from the date of judgment to retirement.").

169.   **COMPENSATORY DAMAGES**.  Plaintiff has suffered future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, for which he seeks recovery in this lawsuit under Section 1981 and Title VII.  See, e.g., *Salinas v. O'Neill*, 286 F.3d 827, 833 (5th Cir. 2002) see also 42 U.S.C. § 1981A(a)(1) (providing for compensatory damages for such harms under Title VII).

170.   **PUNITIVE DAMAGES.**  Defendant acted with malice and reckless indifference to Plaintiff's federally protected civil rights, thus justifying awards of punitive damages under Section 1981 and Title VII.  See, e.g., *Abner v. Kansas City Southern Railroad Co.*, 513 F.3d 154, 164 (5th Cir. 2008) see also 42 U.S.C. § 1981A(a)(1) (providing for punitive damages under Title VII when the discrimination is shown to be with "malice or reckless indifference").  In *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S. Ct. 2118 (1999) the U.S. Supreme Court, interpreting Title VII, held that to satisfy the "malice or reckless indifference" requirement, the plaintiff does not have to prove that the violation was egregious or outrageous.  *Id.* at 535-36.

171.   **ATTORNEY'S FEES.**  Attorneys fees are recoverable to a prevailing plaintiff under Section 1981 and Title VII.  See *Miller*, 716 F.3d at 149 (affirming an award of attorneys' fees of $488,437.08 to the plaintiff in a single-plaintiff discrimination case that arose in Dallas); *Lewallen v. City of Beaumont*, 394 Fed. Appx. 38, 46 (5th Cir. 2010) (affirming an award of attorneys' fees of $428,421.75 to the plaintiff in a single-plaintiff discrimination failure to promote case); *Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d

777, 789 (S.D. Tex. 2007) (awarding prevailing plaintiff in a single-plaintiff discrimination case tried in Houston $336,010.50 in attorneys' fees).

172.    Plaintiff seeks all other legal and equitable relief necessary to compensate Plaintiff fully, make Plaintiff whole, and remedy Defendant's unlawful employment practices.

## X. JURY DEMAND

173.    Plaintiff demands a trial by jury on all claims and issues so triable.

## XI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Zohra Mavani respectfully prays that Defendant Daspit Law Firm be served with process and required to answer, and that upon final trial or other disposition, Plaintiff recover judgment against Defendant for:

1.    Actual damages, including uncapped back pay, lost wages, unpaid wages, lost benefits, lost bonuses, unpaid bonus compensation, unpaid client source fees, and other economic damages;

2.    Uncapped Front pay, reinstatement, or other equitable make-whole relief;

3.    Lost benefits and Wages and Compensatory damages for emotional distress, mental anguish, humiliation, inconvenience, reputational harm, professional harm, medical distress, and other non-economic injuries;

4.    Punitive damages under federal law;

5.    Reasonable attorney's fees, court costs, expert fees where recoverable, and litigation expenses;

6.    Pre-judgment and post-judgment interest as allowed by law;

7.    Declaratory, injunctive, and equitable relief as appropriate;

8.    All remedies available under Title VII, the Pregnancy Discrimination Act, Chapter 21 of the Texas Labor Code, the Pregnant Workers Fairness Act, the Family and Medical Leave Act to the extent applicable, and any other applicable law; and

9.    Such other and further relief, at law or in equity, general or special, to which Plaintiff may show herself justly entitled.

Respectfully Submitted,

**ZUMPANO PATRICIOS, P.A.**

9575 Katy Fwy, Suite 105

Houston, Texas 77024

*/s/Julian Frachtman*
**H. Julian Frachtman**
**Partner-in-Charge | Houston**
SDTX: 2695031
SBN: 24087536
tel: 832.499.0611
fax: 713.651.0819
Jfrachtman@zplaw.com
COUNSEL FOR PLAINTIFF